## George H. Monroe *v.* Charles Peck.

The plaintiff purchased, and agreed to hold for thirty days, certain stock, on an agreement with the defendant that the latter should bear any loss on the transaction, the profits, if any, to be divided equally between them. The stock having declined in price, the plaintiff, after the expiration of the thirty days, brought action, alleging a loss by reason of the decline. *Held*, that no loss could be said to have been incurred by the plaintiff until the actual sale of the stock by him. And not having sold the stock, he could not recover, as his loss on the transaction, the difference between the price of the stock and its selling price on the expiration of the thirty days.

Appeal from a judgment of the Marine Court of the city of New York, entered on a verdict directed by the court.

The complaint alleged, " that on or about the 31st day of May, 1866, the plaintiff and the defendant entered into an

agreement that the plaintiff should buy and pay for one hundred shares of stock, ' commonly called Old Southern,' and hold the same for thirty days. The defendant agreed, in consideration thereof, to allow the plaintiff one-half of the net profits, if any, and to bear all the loss, if any."

The complaint averred, " that the plaintiff had performed the said agreement on his part, and that the loss amounted to $346 at the termination of the contract," for which sum judgment was demanded. It appeared on the trial that the stock had not been sold at the end of thirty days, nor till some time afterwards; but evidence of the price it then brought was ruled out by the court.

It also appeared that the plaintiff, in July, 1866, had rendered a bill for the loss, as being the difference between the purchase price on May 30th, and the market value thirty days afterwards, which the defendant said he would settle.

After the close of the testimony, the justice directed the jury to find a verdict for the plaintiff for the amount claimed. From the judgment thereupon entered, as affirmed by the general term of the Marine Court, the defendant appealed to this court.

*Cephas Brainerd*, for appellant.

*D. M. Porter*, for respondent.

DALY, F. J.—The agreement, as proved by the two witnesses which the plaintiff called, and by the defendant, was, that if the plaintiff would purchase the stock and hold it for thirty days, the defendant, in the language of the plaintiff's witness Gregory, would pay all *loss*, and divide the profits. The plaintiff adds, " he was to insure me against loss or *decline;*" but that by the word decline he meant loss, appears from the previous part of his testimony, in which he says, " he," the defendant, " would insure me against loss, to *pay* the difference in the decline;" as well as from the two witnesses whom the plaintiff called, and who heard what was said. Now, no *loss* was, or could be, sustained by the plaintiff, until

the stock was actually sold, which was long after the thirty days; and what that loss was is not disclosed, as the judge, for what reason does not appear, would not allow the defendant to show what the stock was finally sold for. The plaintiff has recovered upon the hypothesis that his loss was the market value of the stock at the expiration of the thirty days, though he did not sell it at that time, nor until a long time afterwards; and that, by not selling it then, but holding it, he was to be regarded as holding it after the thirty days at his own future risk. This view of the rights of the parties cannot, in my judgment, be sustained. He had the right to sell it when the thirty days were up, and close the transaction; but he did not do so. It is to be assumed that he deferred the sale of it in the expectation that it would rise beyond what was paid for it; for if sold at the end of thirty days, he would be indemnified against loss, but gain nothing by the transaction. By the construction given to the contract by the defendant, the plaintiff would have everything to gain and nothing to lose, unless the stock went below the market price of it at the expiration of the thirty days. If the defendant's liability was fixed by the market value of it at the time, and it should afterwards sell for anything beyond that, the plaintiff would gain the whole of it. He could incur no risk, except by its further depreciation; and that risk he might be very willing to run, in the expectation that it would rise, with the advantage of having the exclusive benefit of that rise. The more just construction therefore is, in my judgment, to hold that the transaction was not closed until the stock was sold; that no loss was incurred until it was actually sold; that if it was, at the time of sale, sold for less than it could have been sold for at the end of the thirty days, the defendant was not answerable for that excess, as it would have arisen from the plaintiff's neglect to bring the transaction to a close at the end of the thirty days; and if it sold for more than had been paid for it, then there was no loss, but a profit, which, by the terms of the contract, was to be equally divided. If the plaintiff desired to bring the transaction to a close at the end of the thirty days, he should have sold the stock at once, or else notified the defendant that he desired, for his, the

plaintiff's benefit, to hold it longer, in expectation of a rise; and if the defendant assented, he would be regarded as taking the risk of its rising or falling thereafter, until he notified the plaintiff to sell. The plaintiff did not do this. Without consulting the defendant, he kept the transaction open; and if, as the testimony would lead me to infer, the stock had risen when it was actually sold, so as to involve an actual loss only of $150, instead of $346, the amount for which judgment was given; the $150 was the amount for which the defendant was answerable, as the ultimate result of the mercantile adventure, and I therefore think that the judgment should be reversed.

Judgment reversed.